IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| IN RE: JOHN ANDREAS TSIAOUSHIS,  )<br>                                  )<br>    Debtor.                        )<br>_____ )<br>                                  )<br>ENDEKA ENTERPRISES, LLC and       )<br>JAMES CALOMIRIS,                  )<br>                                  )<br>    Appellants,                   )<br>                                  )<br>v.                                )<br>                                  )<br>JANET MEIBURGER, Trustee,         )<br>                                  )<br>    Appellee.                     )  | 1:07cv436<br><br>Bankr. No. 05-15135 (RGM) |

MEMORANDUM OPINION

This appeal involves the decision of the bankruptcy court to grant summary judgment in favor of the Trustee, Janet Meiburger, (the "Trustee") who sought the dissolution of Endeka Enterprises, LLC ("Endeka"). For the reasons discussed below, the decision of the bankruptcy court will be affirmed.

I. BACKGROUND

Endeka is a limited liability company organized under the laws of the District of Columbia. The principal asset of Endeka is a parcel of real estate in the District of Columbia. Appellant James Calomiris ("Calomoris") and John Tsiaoushis (the "Debtor") were originally the sole members and managers of Endeka, which was and is engaged in the business of real estate development and management services. Since being organized, Endeka has had as many as five and as few as two members. Some

time around 2003, the Debtor relinquished or was removed from his role as a manager, leaving Calomiris as the sole manager of Endeka.

Endeka is governed by an Operating Agreement, which was executed on or about April 6, 2000, by Calomiris and the Debtor. Under paragraph 9.1 of the Operating Agreement, Endeka is to be dissolved upon the "death, resignation, expulsion or bankruptcy of a Member or occurrence of any other event that terminates the continued Membership of a Member in the Company." Paragraph 9.2 of the Operating Agreement further provides that, upon the dissolution of Endeka, the members "shall proceed with dispatch and without any unnecessary delay" to sell Endeka's property, and otherwise wind up Endeka's affairs.

On October 14, 2005, the Debtor filed a voluntary petition for bankruptcy protection under Chapter 13 of the Bankruptcy Code. Meiburger was appointed as Trustee and subsequently filed an adversary proceeding naming Endeka and its members as defendants and seeking, among other things, to dissolve the company. On February 9, 2006, the case was converted to a Chapter 11 proceeding.

On December 7, 2006, the Trustee filed a motion for partial summary judgment, asking the bankruptcy court to declare, as a matter of law, that paragraphs 9.1 and 9.2 of the Endeka Operating Agreement are enforceable, which, consequently, would

require appellant James Calomiris to dissolve and wind up the business of Endeka as a result of the Debtor's filing for Chapter 11 protection.

After hearing oral argument, the bankruptcy court granted the Trustee's motion upon finding that the Operating Agreement is not an executory contract. As a result, 11 U.S.C. § 365(e) is inapplicable and paragraphs 9.1 and 9.2 of the Operating Agreement are valid and enforceable. In re Tsiaoushis, 2007 WL 186536 (Bankr. E.D. Va. Jan. 19, 2007). The summary judgment ruling was certified as a final order on March 22, 2007. Calomiris and Endeka thereafter filed their appeal.

## II. ANALYSIS

A. Standard of Review

A district court reviews the decisions of law made by the bankruptcy court de novo and the findings of fact under a clearly erroneous standard. In re Kielisch, 258 F.3d 315, 319 (4th Cir. 2001). Because the only issue in this appeal involves a question of law, our review is de novo.

B. Ipso Facto Clauses and Executory Contracts

We begin our analysis of this appeal by examining the particular statute at issue. Section 365(e) of Title 11 of the U.S. Code provides, in relevant part, that

> Notwithstanding a provision in an executory contract or unexpired lease, or in applicable law, an executory contract . . . of the debtor may not be terminated or modified, and any right or obligation under such

3

>contract . . . may not be terminated or modified, at any time after the commencement of the case solely because of a provision in such contract . . . that is conditioned on . . . (B) the commencement of a case under this title.

Id. Section 365(e)(1) "invalidates ipso facto provisions, which, in this context, are provisions of law or contract which specify that a bankruptcy filing per se will terminate or modify an executory contract." In re Woskob, 305 F.3d 177, 184 (3d Cir. 2002) (internal citations omitted). In other words, if the Operating Agreement constitutes an executory contract, paragraphs 9.1 and 9.2 would be invalid under § 356(e) and Endeka would not have to be dissolved.

Although not defined in the bankruptcy code, the legislative history and case law cite with approval Professor Countryman's definition of an executory contract as "A contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other." See In re Garrison-Ashburn, L.C., 253 B.R. 700, 708 (Bankr. E.D. Va. 2000) (quoting COLLIER ON BANKRUPTCY, ¶ 365.02(1), at n. 1 (15th ed.); Countryman, Executory Contracts in Bankruptcy, 57 MINN. L. REV. 439, 446 (1973)). "Under the Countryman standard, the inquiry is whether both parties to the contract have unperformed obligations that would constitute a material breach if not performed. If so, the contract is

4

executory." In re Allentown Ambassadors, Inc., 361 B.R. 422, 444 (Bankr. E.D. Pa. 2007).

Several courts have addressed the issue of executory contracts in relationship to partnership agreements;[1] however, few reported decisions have applied that concept in the context of limited liability company operating agreements. The limited number that have done so have analyzed the specific operating agreement at issue to determine whether a continuing obligation arises by its terms.[2] Appellants attempt to avoid this particularized analysis by arguing that members of small limited liability companies, such as Endeka, owe fiduciary duties to their respective companies as a matter of course, that a fiduciary duty is a continuing obligation, and that, therefore, all limited liability operating agreements are executory

---

[1] See generally In re Catron, 158 B.R. 629, 634 (Bankr. E.D. Va. 1993) (collecting cases supporting majority rule that partnership agreements are generally considered executory contracts).

[2] See In re Allentown Ambassadors, Inc., 361 B.R. at 444 (concluding that the operating agreement at issue was an executory contract because the members of the limited liability company had ongoing, material, unperformed obligations to one another, including the duty to manage the LLC and the duty to make additional cash contributions if needed by the LLC); In re Capital Acquisitions & Mgmt. Corp., 341 B.R. 632, 636-37 (Bankr. N.D. Ill. 2006) (concluding that the specific operating agreement at issue was not an executory contract because there was no current obligation or any role for the member in the management of the LLC); In re Garrison-Ashburn, L.C., 253 B.R. 700 (Bankr. E.D. Va. 2000) (discussed infra); In re Daugherty Constr., Inc., 188 B.R. 607 (Bankr. D. Neb. 1995) (discussed infra).

contracts subject to the provisions of § 365.

To support this argument, appellants first attempt to demonstrate that partnership agreements are considered executory contracts per se, solely because partners owe fiduciary duties to each other and to the partnership. Appellants then argue that the same analysis should apply to limited liability company operating agreements. See Appellants' Br. at 4 (citing In re Garrison-Ashburn, L.C., 253 B.R. 700 (Bankr. E.D. Va. 2000); In re Daugherty Constr., Inc., 188 B.R. 607 (Bankr. D. Neb. 1995)). Assuming, arguendo, that all partnership agreements are executory contracts and that the existence of a fiduciary duty, alone, constitutes a continuing obligation, a contention that the Trustee does not concede, the appellants nevertheless have failed to establish that District of Columbia law recognizes fiduciary duties between members of a manager-managed limited liability company.

Appellants analogize small, limited liability companies, such as Endeka, to small, closely-held corporations. Relying on Helms v. Duckworth, 249 F.2d 482, 486-87 (D.C. Cir. 1957), they argue that minority members of a closely-held corporation owe fiduciary duties to the organization and to other members, and that "no legitimate distinction between Endeka and the closely held corporation in Helms v. Duckworth can be made." Appellants' Br. at 8. The Trustee correctly responds that the Helms court

6

did not find a per se rule that a fiduciary relationship exists by virtue of the small number of individual stockholders. Rather, the Helms court considered "the practical realities of the organization and functioning of a small 'two man' corporation organized to carry on a small business enterprise in which the stockholders, directors and managers are the same persons," and concluded that when the stockholders are also the directors and managers, the stockholders "bear a fiduciary duty to deal fairly, honestly, and openly with their fellow stockholders." 249 F.2d at 486. The court did not announce a per se rule applicable to all closely-held corporations.

The record before the bankruptcy court clearly established that the Debtor was neither a manager nor a director of Endeka, and had no duties as a manager or director when he filed for bankruptcy protection. Moreover, the Operating Agreement explicitly provides that members of Endeka can engage in independent activities without incurring any obligations to either Endeka or to its other members. Lastly, none of the District of Columbia's statutes concerning limited liability companies contains any express provisions imposing fiduciary duties on mere members. See D.C. Code §§ 29-1001 - 29-1075. Accordingly, the reasoning and conclusion of Helms provide no

7

basis for reversing the bankruptcy court.[3]

As did the bankruptcy court, we find no per se rule governing this issue. Rather, as did the bankruptcy court and the other courts that have addressed this issue, we must analyze the particular operating agreement at issue to determine whether it contains material, continuing obligations between the members that would qualify it as an executory contract.[4] Appellants themselves have cited the Court to two cases in which the court undertook such an analysis. See In re Garrison-Ashburn, L.C., 253 B.R. 700; In re Daugherty Constr., Inc., 188 B.R. 607.

In determining the effect of § 365(e) on Virginia's statute

---

[3] Appellants mention, in a footnote, that appellate-level state court decisions from Indiana and Ohio have explicitly found that members of limited liability companies owe fiduciary duties to each other and to the entity. Neither of these cases provides a basis for reversing the bankruptcy court because neither applies District of Columbia authority. See Purcell v. Southern Hills Investments, LLC, 847 N.E.2d 991 (Ind. App. 2006) (holding that common law fiduciary duties are applicable to Indiana limited liability companies); McConnell v. Hunt Sports Entertainment, 725 N.E.2d 1193 (Ohio App. 1999) (holding that an operating agreement of a limited liability company may limit or define the scope of the fiduciary duties imposed on its members).

[4] As the bankruptcy court below recognized, courts do not endeavor to create a per se rule, but rather, "look[] at the facts and circumstances of each case to determine the status of a particular Operating Agreement." In re Tsiaoushis, 2007 WL 186536, *1. But see Thomas F. Blakemore, Limited Liability Companies and the Bankruptcy Code: A Technical Review, 13 AM. BANRK. INST. J. 12, 42 (1994) ("Even when an LLC is manager-managed and the members have no management role, the LLC agreement should still be regarded as executory because the members will have future payment obligations or rights to vote on selected matters.").

8

requiring the dissociation of a member upon the member filing a petition in bankruptcy, the Garrison-Ashburn court analyzed the particular operating agreement at issue to determine whether it was an executory contract. The court found that "the Operating Agreement merely provides the structure for the management of the company. It imposes no additional duties or responsibilities on the members." 253 B.R. at 708. Specifically, the court found that there was "no obligation to provide additional capital; no obligation to participate in management; and no obligation to provide any personal expertise or service to the company," contained in the operating agreement. Id. Moreover, the court held that "[u]nlike partnerships, there are no fiduciary obligations among members" of a Virginia limited liability company. Id. at 709 n. 7. Accordingly, the operating agreement in that case was found not to be an executory contract.

The Daugherty Construction court, similarly, analyzed the particular operating agreement at issue, but held that it was an executory contract because there were "material unperformed and continuing obligations" among the members. 188 B.R. at 612. These continuing obligations included participation in the management of the limited liability company and contribution of capital in the event of a fiscal net loss. Id.

Based on such a particularized evaluation of Endeka's Operating Agreement, the bankruptcy court found that it is not an

9

executory contract subject to the provisions of § 365(e) because its specific provisions do not create a material, continuing obligation on the members. In support of this conclusion, the bankruptcy court found that the Debtor was not a manager at the time of his bankruptcy, and had no managerial duties. As a mere member of the limited liability company, the Debtor had no unperformed duties. The Operating Agreement "merely provides the structure for the management of the company. It imposes no additional duties or responsibilities on the members." In re Garrison-Ashburn, L.C., 253 B.R. at 708. Furthermore, paragraph 1.6 of the Operating Agreement explicitly allows each member of the LLC to "engage in whatever activities he may choose without having or incurring any obligation to offer any interest in such activities" to Endeka or any of its members. This provision is valid under the District of Columbia statutes on limited liability companies, which, like Virginia's statute, allows members to transact business with a company of which they are a member on the same basis as a non-member. See D.C. Code § 29-1021; Va. Code Ann. § 13.1-1026. "The absence of any statutory fiduciary obligation of one member to another or to the company is significant" and points to the Operating Agreement not being an executory contract. In re Garrison-Ashburn, L.C., 253 B.R. at 708 n. 7.

    Furthermore, in this appeal, the appellants fail to cite to

10

any particular portion of the Operating Agreement to support their argument that the Debtor had a fiduciary obligation to the other members, although before the bankruptcy court they attempted to articulate that such a fiduciary duty arose from paragraph 2.3 of the Operating Agreement.  Paragraph 2.3 provides that the members, by unanimous consent, may determine that additional capital funds are necessary and that these funds would be paid by the members.  The bankruptcy court correctly found that paragraph 2.3 does not create an "obligation to provide additional contributions" and that the mere possibility of the members agreeing to contribute additional funds is not sufficient to satisfy Professor Countryman's definition of an executory contracts.  In re Tsiaoushis, 2007 WL 186536, *2.  "[T]he failure to perform a remote and speculative fiduciary duty, if one exists, is not a 'material breach excusing the performance of another.'" Id. (citing Professor Countryman's definition of executory contracts).  A fair reading of the Endeka Operating Agreement therefore precludes the conclusion that it is an executory contract.

## III. CONCLUSION

For the above-stated reasons, the bankruptcy court's grant of summary judgment in favor of the Trustee will be AFFIRMED by an appropriate Order issued with this Memorandum Opinion.

The Clerk is directed to forward copies of this Memorandum Opinion and accompanying Order to counsel of record.

Entered this 19th day of July, 2007.

                                                            /s/
                                           Leonie M. Brinkema
                                           United States District Judge

Alexandria, Virginia